[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11870

_____

GLE SCRAP METAL, INC.,
a foreign profit corporation authorized to do
business in Florida,

                                        Plaintiff-Appellant,

*versus*

TIAN TAN,
TY INTERNATIONAL LLC,
a Florida Limited Liability Company,

                                        Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-00573-PGB-LHP

———————————

Before JORDAN and NEWSOM, Circuit Judges, and GRIMBERG,* District Judge.

PER CURIAM:

This appeal requires us to determine whether the district court abused its discretion when it denied GLE Scrap Metal's motion for a preliminary injunction. The injunction would have enjoined GLE's former employee, Tian Tan, and his new company, TY International, from operating their "Doctor Scrap" app. GLE—a scrap-metal recycling company—filed its motion simultaneously with a complaint alleging that Tan had misappropriated GLE's trade secrets and breached his confidentiality, non-solicitation, and non-competition agreements by marketing his app—which GLE claims is in direct competition to its business.

The district court initially granted a TRO based on the allegations in the complaint, but following an evidentiary hearing, it dissolved the TRO and denied GLE's motion for a preliminary injunction after concluding that GLE failed to demonstrate either

———————————

* Honorable Steven D. Grimberg, United States District Judge for the Northern District of Georgia, sitting by designation.

irreparable injury or a substantial likelihood of success on the merits.  For the reasons explained below, we affirm.

## I

### A

GLE is a recycling company specializing in purchasing, processing, and trading large quantities of scrap metal.  It essentially operates as a "middleman" in that it connects buyers and sellers of various types of scrap metal.  Using valuation formulas that it asserts are proprietary, GLE can quickly price its sellers' metal and identify buyers in a way that it feels provides a competitive advantage.

Tian Tan began working for GLE in June 2017 as its Director of International Marketing, at which time he executed confidentiality, non-solicitation, and non-competition agreements.  Sometime in May 2018, Tan was promoted to Vice President of International Business, which required him to sign a similar agreement.

A large part of Tan's role while at GLE was to receive photos of scrap metal from suppliers and forward them to GLE customers to collect bids.  Tan quickly realized that this process created a "bottleneck" that prevented him from facilitating quick trades.  And so he set out to formulate a tech-based solution: the Doctor Scrap app.  According to GLE, the "app[] would mimic GLE's operations" by quickly pairing buyers and sellers:  It would "examine photographs of the scrap materials being offered for sale to determine the composition," estimate the price, and accept bids from potential customers.  Enlisting the services of his tech-savvy wife, who did the

actual coding, Tan got to work on creating the app. Sometime during the summer of 2021, Tan presented a beta version of the app to Danny Zack—GLE's CEO—but Zack seemed unenthusiastic. Tan interpreted Zack's lack of enthusiasm as a rejection.

According to Tan, after GLE declined to get involved in the app's development, he resigned[1] and continued to develop it using his own resources and contacts. In his resignation email, Tan said that he intended to "chase [his] IT dream to see if [he could] use technology to make some positive change to [the] industry" by focusing on developing the app "as [he] described to [GLE]." And he did, in fact, create an app, but not one—at least according to the district court—that yet performs all of the functions that GLE initially described. In its current state, the district court found, the Doctor Scrap app only collects data—it does not actually facilitate trades.

Soon after Tan and GLE parted ways, Tan began to promote his newly developed Doctor Scrap app—first in an article published in an online trade publication, then in emails targeted to at least one of GLE's customers, and finally in a blast email to a group that GLE claims is its customer list but that Tan insists is a member list from a trade association. In this "[s]olicitation" email blast (as GLE describes it) Tan represented his team as being "experts from GLE" and other companies, even though it was sent months after his

[1] Tan announced his resignation in September 2021, but stayed on to assist with the transition until November 2021. Therefore, the restrictive covenants described in Tan's employment contracts with GLE will soon expire.

departure from GLE.  In this same email, Tan stated that the Doctor Scrap app can be used to "[f]ind solid buyers in each item across the world."

**B**

After GLE learned about Tan's promotional efforts, GLE filed its complaint and emergency motion for a preliminary injunction in the Middle District of Florida.  In the motion, GLE alleged that Tan misappropriated its trade secrets and breached his confidentiality, noncompete, and non-solicitation agreements by using images taken from GLE's (or its customer's) facilities, by employing its proprietary pricing formula to build the Doctor Scrap app, and by marketing the app to its customers.  Based on the allegations in the complaint, the district court immediately issued a TRO enjoining Tan from promoting the app and scheduled an evidentiary hearing to determine whether to convert the TRO into a preliminary injunction.

Following the evidentiary hearing, the district court denied GLE's motion for a preliminary injunction, concluding that it had failed to establish either irreparable injury or a substantial likelihood of success on the merits.

As to irreparable injury, the district court first concluded that any harm that might occur could be remedied ex post through an award of monetary damages.  The court also found that no harm was imminent because GLE hadn't lost any business to the Doctor Scrap app and because the app wasn't capable of actually facilitating trades.

The district court separately concluded that GLE was un-likely to succeed on the merits of its claims. As for its trade-secrets claim, the court held that GLE had failed to show that Tan actually used GLE's trade secrets in developing and promoting Doctor Scrap. In particular, the district court explained, GLE had failed to show that Tan used its proprietary valuation formula to calculate prices or that he used confidential photos from its facility rather than publicly available ones. Moreover, the district court empha-sized, GLE had failed to prove that Tan marketed Doctor Scrap us-ing its customer lists rather than the trade association's member list (which happened to include GLE customers). The district court likewise concluded that GLE was unlikely to succeed on its breach-of-contract claims, finding that Tan's app did not truly compete with GLE because it did not actually facilitate trades. Accordingly, the district court denied GLE's preliminary-injunction motion and ordered the TRO dissolved.

GLE timely appealed to this Court. The denial of a prelimi-nary injunction "rests within the sound discretion of the district court," and we will reverse only if the district court abuses its con-siderable discretion. *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987). Moreover, we review the district court's "[u]nderlying findings of fact [] for clear error." *L.E. by and Through Cavorley v. Superintendent of Cobb Cnty. Sch. Dist.*, 55 F.4th 1296, 1299 (11th Cir. 2022).

For reasons we'll explain, we hold that that the district court neither (1) abused its discretion in concluding that GLE failed to

22-11870              Opinion of the Court                    7

demonstrate irreparable injury nor (2) made any clearly erroneous findings of fact in the course of so concluding.  Accordingly, we affirm the district court's refusal to issue the preliminary injunction on the irreparable-injury ground alone, making it unnecessary for us to consider whether GLE successfully established a substantial likelihood of success on the merits.

## II

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).   In order to obtain one, the moving party (here, GLE) must establish four separate requirements—that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020).

A showing of irreparable harm is "the sine qua non of injunctive relief."  *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)).  "The injury must be 'neither remote nor speculative, but actual and imminent.'"  *Id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)).  As we have explained, "[t]he key word in this consideration is irreparable."  *Id.*  "Mere injuries, however

substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.*

In concluding that GLE had failed to demonstrate irreparable injury, the district court determined both (1) that GLE had not "affirmatively demonstrated that it would suffer non-compensable harm, such as irreversible damage to its reputation or loss of good will" and (2) that any injuries that GLE sought to avoid "do not appear to be imminent." We find no abuse of discretion in either determination.

Importantly, in its decision, the district court found the following facts: (1) that "[a]t this point in time, [GLE] has not lost any business to [Tan's] Doctor Scrap app"; (2) that "currently [GLE] has not demonstrated the app facilitates actual trades as a middleman"; (3) that "Tan has testified the app currently does not possess this feature" and that GLE has "failed to rebut this assertion"; and (4) that "the evidence did not show that the app currently acts as a middleman, nor does it appear imminently likely to do so." GLE hasn't demonstrated that those findings were clearly erroneous, and together they amply support the district court's determination that GLE failed to show irreparable injury.

On appeal, GLE contends that its harm is indeed imminent because even absent a trading function in the Doctor Scrap app, "the damage to GLE's goodwill ha[s] already started." Br. of Appellant at 14. As the district court's decision reflects, however, GLE offered no evidence to substantiate that assertion. That failure is

fatal, particularly given the standard by which we review the district court's decision.

### III

The district court did not abuse its discretion in concluding that GLE failed to establish irreparable injury and, on that ground, refusing to issue a preliminary injunction. We needn't consider GLE's argument that it successfully established substantial likelihood of success on the merits.

**AFFIRMED.**